UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Little Gem Life Sciences LLC,
individually and on behalf of a
class of persons similarly situated,

           Plaintiff,               **MEMORANDUM OPINION AND ORDER**

    v.                             Civil No. 06-1377 ADM/AJB

Orphan Medical, Inc., John H.
Bullion, and Timothy G. McGrath,

           Defendants.

___

Joel C. Feffer, Esq., Harwood Feffer LLP, New York, NY, and Gregg M. Fishbein, Esq., Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, on behalf of Plaintiff.

Peter W. Carter, Esq., Dorsey & Whitney LLP, Minneapolis, MN, on behalf of John H. Bullion and Timothy G. McGrath, and Richard G. Wilson, Esq., Maslon Edelman Borman & Brand LLP, Minneapolis, MN, on behalf of Orphan Medical, Inc.

___

## I. INTRODUCTION

On December 8, 2006, oral argument before the undersigned United States District Judge was heard on Defendants Orphan Medical, Inc. ("Orphan Medical"), John H. Bullion ("Bullion"), and Timothy G. McGrath's ("McGrath") (collectively "Defendants") Motion to Dismiss [Docket No. 14]. In its Complaint [Docket No. 1], Plaintiff Little Gem Life Sciences LLC ("Little Gem") alleges that Defendants violated federal securities laws by negligently omitting certain information from a proxy statement issued in connection with a merger transaction. For the reasons set forth herein, Defendants' Motion to Dismiss is granted. However, Plaintiff is granted leave to file an amended complaint.

## II. BACKGROUND[1]

Orphan Medical, a Delaware corporation, is a specialty pharmaceutical company that focuses on sleep disorders, pain, and other central nervous system disorders. Compl. ¶ 9. At all relevant times, Orphan Medical's principal place of business was in Minnesota. Id. ¶ 6. Bullion was Orphan Medical's Chief Executive Officer, and served on Orphan Medical's board of directors. Id. ¶ 10. McGrath was Orphan Medical's Chief Financial Officer, Principal Accounting Officer, and a Vice President. Id. ¶ 11.

Orphan Medical's Form 10-K for the period ending December 31, 2004, filed with the Securities Exchange Commission ("SEC") on March 16, 2005, indicates that Orphan Medical marketed three drugs approved by the United States Food and Drug Administration ("FDA"). Leventhal Decl. [Docket No. 19] Ex. B at 5-6.[2] Orphan Medical's lead product was Xyrem (sodium oxybate) oral solution for the treatment of cataplexy associated with narcolepsy. Id. at 2. Orphan Medical was also developing Xyrem for other uses. On January 19, 2005, Orphan Medical submitted a Supplemental New Drug Application to the FDA for approval of Xyrem as a treatment for excessive daytime sleepiness and other symptoms of narcolepsy. Id. If

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

[2] The Court may consider documents provided by Defendants in the Leventhal Declaration that are central to the Complaint. See Stahl v. Dep't of Agric., 327 F.3d 697, 700-01 (8th Cir. 2003). The Court considers Exhibits A (Orphan Medical's May 20, 2005 Proxy Statement) and E (a transcript of an April 26, 2005 conference call) in the Leventhal Declaration to be central to Little Gem's Complaint. Exhibits B (the March 16, 2005 10-K) and D (an April 20, 2005 Form 8-K that includes an April 19, 2005 press release and conference call transcript regarding the merger) are not central to the Complaint, but provide useful dates and details. The Court refers to Exhibits B and D only to establish context, especially for product trials that were ongoing when the alleged omission occurred.

approved, Xyrem could be marketed to an estimated 100,000 to 140,000 individuals suffering from narcolepsy in the United States.  Id.  Additionally, in June 2004 Orphan Medical initiated a clinical trial to assess Xyrem for the treatment of Fibromyalgia Syndrome.  Id.  Fibromyalgia is estimated to affect over 4 million people in the United States.  Id.  The March 16, 2005 Form 10-K indicates that Orphan Medical expected to announce the results of the fibromyalgia trial in the second half of 2005.  Id.

On April 18, 2005, Orphan Medical's board of directors unanimously approved a merger agreement whereby almost all of Orphan Medical's publicly owned stock would be purchased and Orphan Medical would become a subsidiary of Jazz Pharmaceuticals, Inc. ("Jazz"). Leventhal Decl. Ex. A at 16.  On April 19, 2005, Orphan Medical issued a press release and held a conference call regarding the proposed merger.  Leventhal Decl. Ex. D.  On April 26, 2005, Orphan Medical held a conference call to discuss its first quarter earnings.  Leventhal Decl. Ex. E.  During this call, Little Gem alleges that Bullion made comments to the effect that certain data would be released in an upcoming Proxy Statement.  Compl. ¶ 27.

On May 20, 2005, Orphan Medical filed a Proxy Statement with the SEC.  Leventhal Decl. Ex. A.  The Proxy Statement, subsequently mailed to Orphan Medical's stockholders, announced a special meeting, scheduled for June 22, 2005, at which Orphan Medical's stockholders as of May 23, 2005, or their proxies, could vote on the proposed merger.  Id.  The Proxy Statement also provided details about the proposed merger and provided Orphan Medical's reasons for the merger.  Under the merger agreement, each Orphan Medical stockholder would receive $10.75 per share of common stock if the sale gained the necessary approval of Orphan Medical's stockholders.  Id.

As one of Orphan Medical's reasons for the merger, the Proxy Statement refers several times to an opinion prepared by Banc of America Securities LLC ("Banc of America"), the financial advisor to Orphan Medical's board of directors, that the proposed merger was financially fair to holders of Orphan Medical's common stock. Id. at 3-4, 16-24. The Proxy Statement discusses three different valuation methods Banc of America used to arrive at its opinion: (1) selected publicly traded companies; (2) selected precedent transactions; (3) discounted cash flow analysis. Id. at 19-24. Banc of America's two-page written fairness opinion is reproduced in full as Appendix C to the Proxy Statement. The fairness opinion states that Banc of America reviewed financial forecasts prepared by Orphan Medical's management as of April 18, 2005. Id. at C-2. Neither the Proxy Statement nor the attached fairness opinion discloses the assumptions used in Banc of America's discounted cash flow analysis.

The merger was approved by a majority of Orphan Medical's shareholders at the June 22, 2005 shareholder meeting. Little Gem, which owned shares of Orphan Medical at all relevant times, filed a Complaint on April 10, 2006, on behalf of itself and a class of holders of Orphan Medical common stock as of May 23, 2005. Compl. ¶¶ 15-20. Little Gem alleges that "[t]he Proxy Statement's repeated references to the Financial Advisor's opinion are materially false and misleading because the Proxy Statement omits to disclose that the financial advisor failed to consider the full impact of likely significant expansions of the prospective patient base for Xyrem." Id. ¶ 26. Little Gem asserts that Defendants violated § 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as implemented by Rule 14a-9 promulgated by the SEC. Little Gem claims that Bullion and McGrath are individually liable as control persons under     § 20(a) of the Exchange Act.

### III. DISCUSSION

A.   **Motion to Dismiss and Pleading Standards**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." However, the Private Securities Litigation Reform Act of 1995 ("PSLRA") sets more stringent pleading requirements for certain securities law claims based on allegations of misleading statements or omissions:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant . . . omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1)(B). In practice, plaintiffs must plead the "who, what, when, where, and

how" of the alleged misleading statement or omission.  In re K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 890 (8th Cir. 2002) (citation omitted).

Additionally, the PSLRA imposes heightened pleading requirements where a "plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind."  15 U.S.C. § 78u-4(b)(2).  In such actions, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  Id.

**B.     Defendants' Motion to Dismiss**

   **1.     Claims under Section 14(a) of the Exchange Act**

Section 14(a) of the Exchange Act aims "to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation."  J. I. Case Co. v. Borak, 377 U.S. 426, 431 (1964).  Section 14(a) prohibits proxy solicitations that violate rules promulgated by the SEC.  15 U.S.C. § 78n(a).  SEC Rule 14a-9 prohibits a proxy solicitation by means of a proxy statement that "contain[s] any statement which, at the time and in the light of the circumstances under which it is made . . . omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.  Plaintiffs establish a violation of § 14(a) and Rule 14a-9 by showing: (1) the proxy statement contains a material omission; (2) the defendants negligently drafted the proxy statement; and (3) the proxy caused an injury to plaintiffs.  In re BankAmerica Corp. Sec. Litig., 78 F. Supp. 2d 976, 988-89 (E.D. Mo. 1999).

Defendants argue that Little Gem's Complaint must be dismissed because: (1) the Complaint does not plead an omission with the particularity required by the PSLRA; (2) the

Complaint fails to allege a material omission; (3) the Complaint fails to adequately plead loss causation. These arguments are considered in turn.

### a.      The PSLRA's Pleading Requirements

The Complaint asserts that the Proxy Statement, which was provided to shareholders to inform their merger vote at the June 22, 2005 meeting, omitted material information. Specifically, the Complaint's "references to the Financial Advisor's opinion are materially false and misleading because the Proxy Statement omits to disclose that the financial advisor failed to consider the full impact of likely significant expansions of the prospective patient base for Xyrem." Compl. ¶ 26. Stated differently, "the Proxy Statement omitted to disclose that the Financial Advisor . . . materially undervalued Orphan Medical by failing to take into account positive developments involving Xyrem." Id. ¶ 3. In support of these allegations, Little Gem asserts that:

> Xyrem had completed clinical trials in a broader patient population for the symptoms of narcolepsy and Xyrem was being actively studied for treating the symptoms of fibromyalgia. This omission is particularly significant in respect of the Financial Advisor's crucial discounted cash flow analysis. In fact, the drug was approved by the FDA for excessive daytime sleepiness for narcolypsy [sic] in November 2005 and approved for cataplexy in Europe in December 2005. The clinical trials for fibromyalgia, the results of which met their clinical endpoints, were completed prior to the closing of the merger, but the positive data was not released to the public until after the merger. Research and development companies, such as Orphan Medical, are valued based upon anticipated future cash flows; historical information and comparison are irrelevant for valuation purposes. Thus, defendants' omission . . . was highly material.

Id. ¶ 26. Little Gem argues these statements, based on information and belief, satisfy the PSLRA's pleading requirements.

However, "[t]o be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." In re NAHC,

Inc. Sec. Litig., 306 F.3d 1314, 1330 (3d Cir. 2002). Thus, the fact that regulatory approvals occurred in late 2005 can not, by itself, support a conclusion that the discounted cash flow analysis in Banc of America's April 2005 fairness opinion was based on faulty forecasts provided by Defendants.

Similarly, the Complaint's vague statement that "[t]he clinical trials for fibromyalgia, the results of which met their clinical endpoints, were completed prior to the closing of the merger, but the positive data was not released to the public until after the merger," fails to satisfy the PSLRA's particularity requirement. The Complaint fails to allege: (1) when the results from the trials were prepared, (2) who prepared the results, (3) whether the results were in preliminary or final form, (4) when the results were reviewed by Orphan Medical's officers; and (5) which Orphan Medical officers reviewed the results. See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 154 (3d Cir. 2004) (finding that conclusory assertion that defendants had access to undisclosed information before a merger vote was "patently insufficient"). Moreover, the Complaint fails to identify the source of Little Gem's information. See 15 U.S.C. § 78u-4(b)(1) ("[I]f an allegation regarding the . . . omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.").

To buttress its argument that Defendants made a material omission, Little Gem refers to an April 26, 2005 conference call held by Orphan Medical to discuss its first quarter earnings. During the call, Bullion responded to questions raised by Jeffrey Benson ("Benson") of Little Gem, who was "upset" by the timing of the proposed merger. Leventhal Decl. Ex. E at 3. In response to a question from Benson, Bullion stated:

> Jeff, again, let's hold these questions until we have the proxy out because, again, until the proxy is out, as I said, we can't openly talk about the process and the decision-making

> that went into it until that is out. And then that document, I believe, will explain in much more detail the decision that the Board took to engage in the acquisition by Jazz Pharmaceuticals.

Id. Little Gem construes this statement as asserting that data from the fibromyalgia trial, or data regarding Xyrem's likely future patient base, would be disclosed in the Proxy Statement. See Compl. ¶ 27; Mem. in Opp'n to Mot. to Dismiss [Docket No. 23] at 7. Little Gem contends that the Proxy Statement's failure to disclose such data, in light of Bullion's alleged promise, supports the conclusion that Defendants failed to disclose that the fairness opinion was based on materially faulty assumptions. This argument is unavailing, however, because Bullion's vague statement during the earnings conference call can not be read as a promise that specific data regarding the fibromyalgia trial or Xyrem patient base assumptions would be disclosed in the Proxy Statement.

In short, Little Gem has failed to plead the facts underlying an omission with the particularity required by the PSLRA. Therefore, the Complaint must be dismissed. Given this holding, analysis of additional arguments raised by Defendants is unnecessary. However, in light of the parties' extensive briefing, and the possibility that Little Gem may file an amended complaint as discussed below, the Court will address significant arguments raised by Defendants.

   **b.**  **Materiality**

     **i.**  **Vagueness**

An omitted fact is material under SEC Rule 14a-9 "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). To prove materiality, a plaintiff must show

9

>a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.  Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

Id.  "While materiality is generally a question of fact reserved for the jury, alleged misrepresentations are immaterial as a matter of law where a court determines that no reasonable investor could have been swayed by the alleged misrepresentation."  In re Amdocs Ltd. Sec. Litig., 390 F.3d 542, 547 (8th Cir. 2004).

Defendants contend that the omission alleged in the Complaint is immaterial as a matter of law due to its vagueness.  Defendants argue that statements about the "full impact of likely significant expansions of the prospective patient base for Xyrem" can not form the basis of a § 14(a) claim.  The Court agrees that Little Gem's formulation of the omission does not adequately plead materiality.  The Complaint fails to explain what the size of the "full impact" of likely expansions in the Xyrem patient base was, and how much, if any, of the "full impact" was accounted for by Defendants' forecasts and Banc of America's fairness opinion.  Without such information, the Complaint fails to sufficiently plead that the omitted fact would have significantly altered the total mix of information available to Little Gem's shareholders.

### ii.     The Bespeaks Caution Doctrine

Defendants also assert that the alleged omission is immaterial as a matter of law under the bespeaks caution doctrine.  This doctrine states that sufficient cautionary language can render alleged omissions or misrepresentations in forward-looking statements immaterial as a matter of law.  Parnes v. Gateway 2000, Inc., 122 F.3d 539, 548 (8th Cir. 1997), citing In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 371 (3d Cir. 1993).  "The cautionary language must 'relate

directly to that by which plaintiffs claim to have been misled.'" Id., quoting Kline v. First W. Gov't Sec., Inc., 24 F.3d 480, 489 (3d Cir. 1994). The bespeaks caution doctrine applies on a motion to dismiss only if the cautionary language is such that "'reasonable minds' could not disagree that the challenged statements were not misleading." Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995).

Defendants contend that the discounted cash flow analysis in Banc of America's fairness opinion is forward-looking and that the Proxy Statement contained sufficient cautionary language for the bespeaks caution doctrine to apply. Defendants specifically refer to language in the Proxy Statement that "[t]he estimates contained in Banc of America Securities' analyses and the ranges of valuations resulting from any particular analysis are not necessarily indicative of actual values or predictive of future results or values, which may be significantly more or less favorable than those suggested by the analyses." Leventhal Decl. Ex. A at 23.

In response, Little Gem first argues that an omission can not be a forward looking statement for purposes of applying the bespeaks caution doctrine. This argument is unavailing, however, since the Eighth Circuit has clearly stated that "a defendant's alleged misrepresentations *or omissions* may be immaterial as a matter of law if accompanied by sufficient cautionary statements." Parnes, 122 F.3d at 548 (emphasis added). Little Gem also argues that a discounted cash flow analysis is not forward looking because it determines the present value of a company's future prospects. However, "'mixed statements' consisting of forward looking and non-forward looking factors are nonetheless treated by courts as forward looking." In re Merrill Lynch & Co. Research Reports Sec. Litig., 273 F. Supp. 2d 351, 376 (S.D.N.Y. 2003). In arriving at a present value, the discounted cash flow analysis incorporates

11

forward looking assumptions about future cash flows. Therefore, a discounted cash flow analysis is forward looking for the purposes of the bespeaks caution doctrine.

Little Gem further argues that the bespeaks caution doctrine can not apply because the PSLRA's safe harbor for forward looking statements, which is similar to the bespeaks caution doctrine, contains an express exclusion for "going private" transactions such as the merger in the instant case. See 15 U.S.C. §§ 78u-5(b)(1), (c)(1).[3] Little Gem asserts that it would be against the policy of Congress to apply the bespeaks caution doctrine where the PSLRA's safe harbor is specifically excluded. However, Little Gem provides no authority for the proposition that the PSLRA can have a preemptive effect on the bespeaks caution doctrine. To the contrary, at least two courts have found that "[t]he PSLRA's legislative history indicates that the PSLRA was not intended to pre-empt any protection for forward-looking statements provided by the bespeaks caution doctrine." In re Splash Tech. Holdings, Inc. Sec. Litig., No. C 99-00109, 2000 U.S. Dist. LEXIS 15369, at *28 (N.D. Cal. Sept. 29, 2000); see also In re Gilat Satellite Networks, Ltd., No. CV-02-1510, 2005 U.S. Dist. LEXIS 41996, at *33 (E.D.N.Y. Sept. 19, 2005) ("Congress did not intend for the PSLRA safe harbor to replace the bespeaks caution doctrine or to foreclose its further common law development."). The PSLRA does not exclude application of the bespeaks caution doctrine in the instant case.

Finally, Little Gem argues that the Proxy Statement does not contain meaningful cautionary language regarding the alleged omission. Because the omission is not pled with

---

[3] Although Defendants raised the PSLRA's safe harbor in support of their Motion to Dismiss, their Reply Memorandum does not address Little Gem's argument that the going private exclusion applies, and Defendants did not argue the PSLRA's safe harbor at oral argument. Therefore, the safe harbor defense will not be addressed here.

sufficient particularity under the PSLRA, and an amended complaint could include changes that may alter the bespeaks caution analysis, it is premature to address whether meaningful cautionary language is provided in the Proxy Statement.

### c. Loss Causation

Under the PSLRA, plaintiffs "have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). In a securities fraud action under § 10(b) of the Exchange Act, the Supreme Court interpreted this language to require that a plaintiff must also allege loss causation. Dura Pharm. Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 1634 (2005). Defendants contend that the Complaint does not adequately allege loss causation.

The Complaint alleges that "[h]ad the individual defendants disclosed in the Proxy Statement the omission described herein, the Orphan Medical stockholders would not have voted for or given their proxies in favor of the merger or would have elected to exercise their right of appraisal under Delaware law." Compl. ¶ 34. The Complaint further alleges that "Plaintiff and the Class have sustained damages by reason of defendants' misrepresentations as described herein." Id. ¶ 36.

As currently alleged, these statements fail to clearly specify "what the relevant economic loss might be or . . . what the causal connection might be" between the loss and the omission. Dura, 125 S. Ct. at 1634. Therefore, the Complaint fails to adequately plead loss causation.

### 2. Claims under Section 20(a) of the Exchange Act

The Complaint asserts that Bullion and McGrath are individually liable as controlling

13

persons within the meaning of § 20(a) of the Exchange Act.[4]  Little Gem recognizes that liability under § 20(a) is premised upon liability under § 14(a).  Since Defendants' Motion to Dismiss is granted regarding the § 14(a) claims, the § 20(a) claims must also be dismissed.

**C.     Leave to File an Amended Complaint**

At oral argument, counsel for Little Gem requested leave to file an amended complaint should the Court determine, as it has, that the Complaint is deficient.  Although the Court has doubts about whether there is a factual basis enabling Little Gem to cure the significant pleading problems discussed above, Little Gem is granted leave to file an amended complaint.

---

[4] "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."  15 U.S.C. § 78t(a).

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 14] is **GRANTED**;

2. Plaintiff's Complaint [Docket No. 1] is **DISMISSED WITHOUT PREJUDICE**; and

3. Plaintiff may file an amended complaint on or before March 16, 2007.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 16, 2007.